215 N.J. Super. 375 (1987)
521 A.2d 1336
ESTATE OF KATHERINE K. NEUBERGER, DECEASED, PLAINTIFF-RESPONDENT,
v.
THE TOWNSHIP OF MIDDLETOWN, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MIDDLETOWN, AND THE LANDMARKS COMMISSION OF THE TOWNSHIP OF MIDDLETOWN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1987.
Decided March 2, 1987.
*377 Before Judges MICHELS, O'BRIEN and LANDAU.
William F. Dowd argued the cause for appellants (Mark T. Karinja, on the brief).
Chester Apy argued the cause for respondent (Apy and Margalotti, attorneys; Chester Apy, on the brief).
The opinion of the court was delivered by LANDAU, J.S.C. (temporarily assigned).
This is an appeal by defendants Township of Middletown, Township Committee of the Township of Middletown, and the Landmarks Commission of the Township of Middletown (collectively Middletown) from a final judgment of the Law Division which declared invalid the Middletown "Landmarks Commission and Historical Preservation Ordinance," (Historic Ordinance) based upon the proofs and legal arguments presented in an action in lieu of prerogative writs. The action was commenced by plaintiff, Estate of Katherine K. Neuberger, Deceased (Estate) after certain property of the Estate was designated "historic" by the Landmarks Commission pursuant to the Historic Ordinance on October 11, 1984. We affirm the declaration of invalidity, but for reasons which vary from those expressed by the trial judge.

*378 THE ORDINANCE
It is undisputed that Middletown adopted the Historic Ordinance on September 10, 1974, as amended by ordinance on November 23, 1982. Only the amended ordinance appears in the record.
Middletown was one of the pioneer municipalities which sought to recognize the desirability of taking steps to preserve historic districts and landmarks. As amended, the Historic Ordinance enunciated as its purpose:
[t]o promote the educational, cultural, economic and general welfare of the township: through the preservation of historic buildings and structures, and of places and districts of historic interest; through the development and maintenance of appropriate settings for such buildings, structures, places and districts; and through collateral activities to document and promote the public enjoyment of such buildings, structures, places and districts, which impart to residents and visitors alike a distinct aspect of the township and which serve as visible reminders of the historic and cultural heritage of the township, the state and the nation. (Section 16A-2)
A landmarks commission of seven members is established under the Historic Ordinance, with the following pertinent powers:
Review by Commission
The Landmarks Commission shall review buildings, places and structures within the township, individually and collectively, in regard to their merit in several categories:
Historic events associated therewith, their architectural merit, age, persons of note who owned, used or were otherwise associated therewith, and their significance in the development of the township, county, state or nation. (Section 16A-18)
"Historic" Designation by Commission
The Landmarks Commission shall designate as "Historic" those buildings, places and structures which in regard to the category set forth in Section 16A-18 hereof have merit of a degree warranting their preservation. Although the historic designation may be applied on the basis of merit in more than one category, it may also be applied on the basis of merit in any single category even when there is no demonstrated merit in any other category. The Historic designation shall apply both within and outside historic districts and shall be deemed to include the tax map lot(s) upon which the designated building, place or structure is located. (Emphasis supplied) (Section 16A-19)
After designation of a historic site by the Landmarks Commission, it is shown on a "Historical Map" of the township and *379 recorded in the county clerk's office "in the same manner as ... [a] lien upon real property."
The Historic Ordinance also establishes a number of "historic districts" within the municipality which are required to be shown on the zoning map.
Once designated as a historic site, no material visible change in any building or structure thereon (including color of paint) may be made without a "certificate of appropriateness" procured from the Landmarks Commission under procedures set forth. Demolition is subject to stringent standards, but owners denied certificates are afforded a period of time to solicit "fair market price" offers from persons willing to preserve the structure and land, following which demolition is permitted if no such offer at a price reasonably related to fair market value has been received. Denials of such certificates are appealable to the township committee and to court. A $500 per day penalty is established for any violation of the ordinance.

THE PROPERTY
By letter from the Landmarks Commission dated October 15, 1984, the "Historic" designation was conferred upon property known as "Property No. 332, Block 38, Lot 5, 628 Middletown  Lincroft Road." The minutes of the Landmarks Commission meeting indicate that "Prop. # 332's complex of house and two barns," including "service access road to north of residence" was designated as "Historic Notable."[1] Plaintiff's brief indicates that the entire 65 acre farm, upon which sit a large farmhouse and various other buildings including two barns, is known on the Tax Map as Block 38, Lot 5 and so might be deemed included in the designation under the ordinance.
From 1934 until her death in 1982, the property was owned by Katherine K. Neuberger, who amassed a distinguished career *380 of service to her community, state and nation. She resided in the farmhouse, which dates to the 18th century, and appears to have kept faith with its historic character. In August 1984, prior to the historic designation, it is asserted [without support in the record] that the Estate entered into a contract for sale of the property and that the contract purchaser is seeking Mt. Laurel II relief for the property. This was confirmed at oral argument.
It is unnecessary for us here to consider the question, not addressed below, whether the Landmarks Commission's designation applies only to the main house and two barns with their service road, or to the entire lot and block reference made in the letter of designation.

STANDING
Although Middletown challenges the Estate's standing to question the Historic Ordinance, the Estate property is patently affected by the designation made thereunder. One of the points argued before the trial judge, and the principal basis for the judgment below, was the assertion of vagueness and consequent inadequacy of the standards set forth in the Historic Ordinance to govern the discretionary designation of historic sites.[2]
Relying upon Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439, 458 (1974) and State v. Cameron, 100 N.J. 586, 624 (1985), Middletown urges that because the Neuberger home is historically notable by any yardstick, the Estate has no standing to assert a vagueness argument which even if correct would be applicable only to others. As we observed, this is only one of the reasons urged in support of the contention that the ordinance is invalid. Moreover, the problems *381 we perceive with this ordinance are based upon separate issues raised by the Estate. Accordingly, its standing in this matter as an affected property owner is not subject to question. See, e.g., So. Burl. Co. NAACP v. Mt. Laurel Twp., 67 N.J. 151, 159 n. 3 (1975) app. dism. 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed. 28 (1975).

THE ORDINANCE
The trial judge extensively reviewed the Historic Ordinance and concluded that the standards which the Landmarks Commission must employ in making `historic' designations are too broad and vague to be capable of objective application. It is clear that the drafters of the ordinance at least made a substantial effort to establish coherent standards. It is unnecessary to consider the vagueness issue, however, in light of our concern with a more fundamental problem raised by the Estate below and on appeal, i.e., the failure of Middletown to comply with the provisions of State enabling legislation, the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., when it delegated historic site and district designation power to its Landmarks Commission.
Invalidity of this delegation is not based upon the Estate's contention that the State has preempted local designation of historic sites by its enactment of the State Register Law, N.J.S.A. 13:1B-15.128 et seq. Although there is no express delegation of powers to municipalities in the State Register Law, we do not read into that limited statute a legislative intention to preempt all municipal action to preserve historic sites. To the contrary, the Legislature has clearly signalled its desire to expand the municipal role in such preservation efforts, at least since enactment of the Municipal Land Use Law as L. 1975 c. 291 § 1 et seq. (N.J.S.A. 40:55D-1 et seq.) The question is not whether the Legislature has left room for municipalities to place their local imprint on historic site and district selection, but how this municipal power is to be exercised.
*382 We hold that it must be exercised according to the enabling authority and local planning and zoning scheme provided by N.J.S.A. 40:55D-1, et seq. This conclusion is further fortified and compelled by the most recent amendments to that law in L. 1985 c. 516, although we are satisfied that municipal designation of historic districts and sites necessarily fell under the zoning and planning powers in New Jersey long before those amendments.
It is generally accepted that such historic designation ordinances are, in essence, zoning ordinances.
Although an historic district ordinance is in essence a zoning ordinance, under the usual zoning ordinance the property owner is free, within its stated guidelines and limitations, to erect the type of structure he desires, while with an historic district ordinance the property owner is limited to what use he can make of the already existing structure. (Emphasis supplied)

Rathkopf, The Law of Zoning and Planning, (4th Ed. 1986), § 15.01 at 15-2.
Historic preservation has been classified as an aspect of aesthetics in zoning. See McQuillan, Mun. Corp., (3d Ed. 1986) § 25.31. Aesthetic considerations are proper subjects to be considered in exercise of the planning and zoning powers. See Home Builders League of So. Jersey, Inc. v. Tp. of Berlin, 81 N.J. 127, 145 n. 4 (1979); Westfield Motor Sales v. Town of Westfield, 129 N.J. Super. 528, 535-539 (Law Div. 1974).

THE 1975 LEGISLATION
N.J.S.A. 40:55D-20 unequivocally provides, under the heading of "Exclusive Authority of Planning Board and Board of Adjustment," that any power expressly authorized by the Municipal Land Use Law to be exercised by a planning board or board of adjustment "shall not be exercised by any other body, except as otherwise provided in this act." (Emphasis supplied) Under N.J.S.A. 40:55D-28, the planning board is given authority to adopt or amend a master plan to guide the use of lands within the municipality in a manner which protects the public health and safety and promotes the general welfare. Among the elements to be presented in the plan, as recognized in the 1975 act, are: "A statement of objectives, principles, assumptions, *383 policies and standards upon which the constituent proposals for the physical, economic and social development of the municipality are based; ..." and "A community facility plan element showing the location and type of educational or cultural facilities, historic sites ... including their relation to surrounding areas." (Emphasis supplied) N.J.S.A. 40:55D-28(b)(1) and (6).
Under N.J.S.A. 40:55D-4, "`Historic Site' means any building, structure, area or property that is significant in the history, architecture, archeology or culture of this State, its communities or the Nation and has been so designated pursuant to this act ..."[3]
N.J.S.A. 40:55D-6 defines "`Public Area' to include (1) public parks, playgrounds, trails, paths and often recreational areas; (2) other public open space; (3) scenic and historic sites; ...." (Emphasis supplied)
Thus, even prior to L. 1985 c. 516, the Legislature specifically recognized historic designation as a part of the planning functions to be exercised under the land use powers of the municipality and expressly prohibited any power authorized to a planning board to be exercised otherwise then as provided in the Municipal Land Use Act. This was consistent with the constitutional grant of power to local municipalities to adopt zoning ordinances. N.J. Const., (1947), Art. IV, § VI, par. 2.
The trial judge correctly noted that the Historic Ordinance does have an impact on the use of property, because the owner of historic designated land cannot use his property for all purposes permitted by the zoning ordinance. It has long been recognized that use restraints must be general and uniform in a particular district, see, e.g., Roselle v. Wright, 21 N.J. 400, 409 (1956), and that municipalities have no power to zone except as delegated to them by the Legislature under the *384 zoning enabling act. Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6, 20 (1976). Planning and zoning powers may not be exercised by indirection; the exercise of these functions "must needs be in keeping with the principles of the enabling statutes." Reid Development Corp. v. Tp. of Parsippany-Troy Hills, 10 N.J. 229, 238 (1952). Although our constitution provides that the powers granted to municipalities must be liberally construed (N.J. Constitution, Art. IV, § VII, par. 11) this constitutional mandate "constitutes no warrant for [municipalities] ... imposing conditions on the operation of a statute where the Legislature has not ... authorized either expressly or by implication the imposition of such conditions." Magnolia Development Co. v. Coles, 10 N.J. 223, 227 (1952). See also Kligman v. Lautman, 53 N.J. 517, 537 (1969). In Lusardi v. Curtis Point Prop. Owners Ass'n, 86 N.J. 217, 226 (1981) the Supreme Court restated the strong New Jersey policy that, "Local governments have the power to zone only through legislative delegation of the State's police power. N.J. Const. (1942) Art. IV, § VI, par. 2. This delegation of power is currently embodied in the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -92." In Lusardi, the Court noted that preservation of the environment from destruction was a policy properly effectuated through the zoning power, id. at 229 n. 3. Piscitelli v. Tp. Comm. of Scotch Plains, 103 N.J. Super. 589, 599 (Law Div. 1968), held that absent statutory authorization, an ordinance delegating to an Architectural Review Board final authority to disapprove building plans on aesthetic grounds, where the owners otherwise complied with all building requirements and zoning ordinance, was an invalid exercise of the municipal zoning power (citing State of Missouri ex rel. Magidson v. Henze, 342 S.W.2d 261 (Mo. Ct. App. 1961).
Most recently in PRB Enterprises, Inc. v. South Brunswick Planning Board, 105 N.J. 1 (1987), the Supreme Court held that a municipal zoning ordinance which delegated to the local planning board power to deny an otherwise permitted use, based upon its subjective evaluation of impact on traffic congestion, *385 was an invalid delegation of zoning power. The Court recognized that the Municipal Land Use Law grants limited authority to a municipality to delegate to its planning board discretion, through the mechanism of the "conditional use," to determine the sites upon which those uses may be developed, subject to ordinance standards of "sufficient certainty and definiteness." Significantly, the Court has again made clear that the Municipal Land Use Law is the sole source of authority for imposition of conditions upon permitted uses, and that the municipal governing body's nondelegable power to enact zoning ordinances thereunder is the exclusive means for determining permitted uses of land in a municipality. PRB, id. at 7-8.
Thus, by legislative recognition and judicial interpretation, restrictions on the nature and use of property have consistently been required to fall under the umbrella of the land use laws which delegate restrictive powers, in derogation of common law, to municipalities to enact "zoning ordinances ... regulating ... buildings and structures, according to their construction, and the nature and extent of their use, and the nature and extent of the uses of land ..." N.J. Const. (1947) Art. IV, § VI, par. 2. It is under this zoning grant that municipalities derive power to control physical development of a community and its environs to promote its social and economic well being. See Rockhill v. Chesterfield Tp., 23 N.J. 117 (1957); Fischer v. Bedminster Tp., 11 N.J. 194 (1953); Metzdorf v. Rumson, 67 N.J. Super. 121 (App.Div. 1961).
New Jersey has endeavored to avoid fractionalization of planning and zoning functions. The wisdom of this unitary approach may be measured by considering the potential for local conflict, if for example, one local body were delegated historic designation powers by ordinance; a second, independent environmental preservation district designation powers; while the zoning ordinance and comprehensive plan had marked for development the same sites or districts designated by the special bodies.

*386 THE 1985 AMENDMENTS
In 1985, the Legislature removed any question as to historic site and district designation by enacting the L. 1985 c. 516 amendments to the Municipal Land Use Law.
N.J.S.A. 40:55D-2 j. now specifically includes the promotion of historic sites and districts as part of the purposes of the Land Use Law. N.J.S.A. 40:55D-4 defines "Historic district" and "Historic site." A "Historic site" is "any real property, man-made structure, natural object or configuration or any portion or group of the foregoing which have been formally designated in the master plan as being of historical, archeological, cultural, scenic or architectural significance."
Under N.J.S.A. 40:55D-28(b) subsection (10), the local planning board is given power to incorporate in the Master Plan, "... where appropriate ... A historic preservation plan element (a) indicating the location, significance, proposed utilization and means for preservation of historic sites and historic districts, and (b) identifying the standards used to assess worthiness for historic site or district designation ..."
In addition, the zoning ordinance itself may designate historic sites or historic districts, regulate them and provide design criteria and guidelines for this regulation. "Designation and regulation pursuant to this subsection shall be in addition to such designation and regulation as the zoning ordinance may otherwise provide." (Emphasis supplied) N.J.S.A. 40:55D-65(i). Thus the municipal body, by modification to its zoning ordinance, may superimpose the "historic" designation upon existing zoning designations and regulations, but only under authority provided by the Land Use Law.
The 1985 amendments also provide authority for the governing body to provide by ordinance for establishment of an historic preservation commission with important recommendatory, advisory and reporting powers. N.J.S.A. 40:55D-107 through 112.
*387 Middletown led the way in recognizing the importance of historic district and site protections for the present and for posterity. With very little modification, it can bring its ordinances within the statutory delegation, if it so chooses.[4] Unfortunately, the very essence of the Middletown Historic Ordinance is to confer powers upon its Landmarks Commission which have never been authorized by the enabling act. It is therefore invalid.
Our determination makes it unnecessary to consider whether the 1985 amendments should be prospectively or retroactively applied in construing the Historic Ordinance. However, even if our analysis had been based only on those amendments, the "time of decision rule" recognized in Kruvant v. Mayor & Council of Tp. Cedar Grove, 82 N.J. 435, 440 (1980), and Hohl v. Readington Tp., 37 N.J. 271, 279 (1962), would here operate to require that our interpretation of the ordinance be consistent with the current legislative expression.
At oral argument, it was suggested by Middletown's attorney for the first time that its special charter from the Legislature afforded powers not necessarily possessed by municipalities organized under Title 40. We have read the legislative grants of power in the charter and see no basis for finding that Middletown possesses any unique authority to delegate its municipal zoning and planning powers other than as set forth in the Municipal Land Use Act.

CONCLUSION
Middletown has had and continues to have broad authority to legislate in aid of its goal to preserve historic districts and landmarks, but this goal must be achieved by means of the *388 Municipal Land Use Law, in harmony with the expressed legislative policy.
Accordingly, the judgment of the trial court is affirmed.
NOTES
[1] There is also a "Historic Exceptional" designation permitted under the ordinance, but it is not material in this matter.
[2] Because of her findings on the inadequacy of standards in the ordinance, the trial judge found it unnecessary to consider the other legal arguments made by the Estate.
[3] Earlier, in 1966, the Legislature also afforded to municipalities the power to acquire historic sites by gift, purchase or condemnation. N.J.S.A. 40:60-25.53.
[4] Periodic scrutiny of its master plan and zoning regulations is a statutory duty of every municipality. Levin v. Tp. of Parsippany-Troy Hills, 82 N.J. 174, 181 n 3.