998 A.2d 530 (2010)
414 N.J. Super. 342
JACKSON HOLDINGS, LLC, Mortimer Litt, Krupnick Realty Holdings, Inc., James R. Johnson, Jr., Raymond F. Shea, Jr., John Furlong, Plaintiffs-Respondents,
v.
JACKSON TOWNSHIP PLANNING BOARD, Defendant-Appellant.
DOCKET NO. A-3435-08T1.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 2010.
Decided July 14, 2010.
*531 Gregory P. McGuckin, Forked River, argued the cause for appellant (Dasti, Murphy, McGuckin, Ulaky, Cherkos & Connors, attorneys; Mr. McGuckin, of counsel; Christopher K. Koutsouris, on the briefs).
William F. Harrison, Newark, argued the cause for respondents (Genova, Burns & Giantomasi, attorneys; Mr. Harrison, of counsel and on the brief; Lisa A. John, on the brief).
Before Judges SKILLMAN, FUENTES and SIMONELLI.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether a trial court may order a planning board to grant an application for a land use approval even though the court determines that there is a substantial question concerning the validity of the part of the zoning ordinance under which that approval was sought. We conclude that if a trial court hearing an action challenging a planning board's decision on an application for a land use approval perceives a substantial question concerning the validity of the part of the zoning ordinance under which the approval was sought, the court should order the governing body's joinder in the action and determine the validity of the disputed part of the zoning ordinance before reviewing the board's decision.
Plaintiff Jackson Holdings applied to defendant Jackson Township Planning Board for preliminary major subdivision approval. Plaintiff proposed to subdivide a 303 acre tract into 493 building lots for single-family residences and four lots for storm water management ponds and open space.
Jackson Holdings' tract is located in what the Jackson Township zoning ordinance designates as the "RG-2 Regional Growth Zone." The ordinance requires a minimum lot size of 3.2 acres in this zone if a proposed residence is to be served by a standard septic system and one acre if a *532 proposed residence is to be served by an alternate-design pilot program treatment system.
In addition, the ordinance delegates authority to the Planning Board to permit higher density residential development in any part of the zoning district served by a public sanitary sewer system. This authority is conferred by designating such higher density development as a "conditional use." Before authorizing a development under this section of the zoning ordinance, the Board must find:
(a) The proposal is not inconsistent with and will not create traffic hazards or adversely affect traffic patterns established by surrounding development; and
(b) The proposal is consistent with the intent and purpose of the Master Plan and Pinelands Comprehensive Management Plan.
If the Planning Board makes those findings and the developer utilizes "Pinelands development credits," the developer may construct up to three residences per acre on lots as small as 9,000 square feet. Jackson Holdings' subdivision application proposed to create 393 9,000 square foot building lots and 100 10,200 square foot building lots.
The Planning Board conducted a three-day hearing on Jackson Holdings' application. The primary issues addressed at the hearing were the anticipated effect of the proposed development upon traffic in the area, the alleged presence of the endangered northern pine snake on the site, and whether Jackson Holdings was required to obtain a Certificate of Filing from the Pinelands Commission confirming that the application is consistent with the Pinelands Comprehensive Management Plan.
By a resolution adopted on November 5, 2007, the Planning Board denied Jackson Holdings' application. The Board concluded that Jackson Holdings had failed to establish that its development proposal was consistent with the Pinelands Comprehensive Management Plan because it had not obtained a "consistent" Certificate of Filing from the Pinelands Commission and failed to adequately address the issue of the presence of the northern pine snake on the site. In addition, the Board found that Jackson Holdings' proposed residential development would create additional traffic hazards and adversely affect traffic patterns in the area. Thus, the Board concluded that Jackson Holdings failed to satisfy either of the previously quoted conditions for the grant of a conditional use approval for its proposed high density residential development and was therefore required to apply to the Zoning Board of Adjustment for a variance.
Jackson Holdings filed this action in lieu of prerogative writs challenging the denial of its application. Although Jackson Holdings' complaint did not challenge the validity of the conditional use section of the Jackson Township zoning ordinance under which it had sought subdivision approval, Jackson Holdings' trial brief included a direct challenge to this provision. That brief argued that the ordinance failed to contain "sufficient definite standards" and that the "governing body [had] impermissibly delegate[d] its zoning powers to the planning board." In its answering trial brief, the Planning Board argued that the issue of the validity of the section of the zoning ordinance authorizing high density residential development in the RG-2 zone as a conditional use was not properly before the trial court because plaintiff had not joined the Jackson Township governing body as a party to the action.
The trial court concluded that there was a substantial question as to the validity of the section of the Jackson Township zoning ordinance that establishes as one condition for approval of a conditional use for *533 a high density residential development that it "will not create traffic hazards or adversely affect traffic patterns established by surrounding development[.]" We quote this part of the trial court's opinion because of its significance to our disposition of the appeal:
The standards under Section 109-81D(2)(a) are problematical. The municipality's requirement that an applicant demonstrate that their proposal "will not create traffic hazards" or "adversely affect traffic patterns" in surrounding development does not contain definite specifications to guide the Board.
....
The Municipal Ordinance in this case Section 109-81D(2)(a) provides the Planning Board with no definite specifications or standards to guide them in their evaluation of "traffic hazards" or if the proposed development will "adversely affect traffic patterns established by surrounding development." ... The record establishes that following review and studies by the County engineering department, that the proposed development met the County's transportation model. It is reasonable to infer from this statement that the applicant met and satisfied specific County standards.... However, the same cannot be said of the municipal ordinance which is entirely devoid of standards and specifications.
Despite concluding that the section of the zoning ordinance requiring the Planning Board to find that a proposed high density residential development "will not create traffic hazards or adversely affect traffic patterns established by surrounding development ... is entirely devoid of standards and specifications[,]" the trial court did not invalidate this provision. Instead, the court proceeded to consider whether the Board's decision that Jackson Holdings failed to establish this condition was supported by the record and concluded that "it was not reasonable for the Board on the basis of this record to find that the proposed development would create traffic hazards or adversely [a]ffect traffic patterns." The court also concluded that the other grounds upon which the Board had denied Jackson Holdings' application were not supported by the record. Accordingly, the court reversed the Board's decision and remanded to the Board for adoption of a resolution approving Jackson Holdings' application for subdivision approval.
On an initial review of this appeal, we questioned whether it was appropriate for the trial court, after expressing doubt about the validity of the section of the zoning ordinance under which Jackson Holdings had applied for subdivision approval, to order the Planning Board to grant the approval, rather than first adjudicating the validity of that provision. Consequently, we asked the parties to submit supplemental briefs addressed to the following three questions:
1. If a court hearing an action in lieu of prerogative writs challenging the grant or denial of a development approval concludes that there is a substantial question concerning the validity of the zoning ordinance under which that approval is sought, does the court have an obligation to raise the question of the validity of the ordinance and require joinder of the municipal governing body in the action?
2. Is it appropriate for a trial court to enter a judgment that has the effect of granting a development approval if the court concludes there is a substantial question concerning the validity of the ordinance under which that approval was sought?

*534 3. Is there a substantial question concerning the validity of the "conditional use" section of the Jackson Township zoning ordinance under which plaintiffs sought their development approval (§ 109-81(d)(2)) because this provision, particularly subsection (a), either lacks the "definite specifications and standards" for a conditional use required by N.J.S.A. 40:55D-67 or constitutes an impermissible delegation to the planning board of the governing body's responsibility to determine the appropriate density of residential development by means of the zoning ordinance. See PRB Enterprises, Inc. v. South Brunswick Planning Bd., 105 N.J. 1, 7-10, 518 A.2d 1099 (1987).
The authorization under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, for a municipality to adopt a zoning ordinance that permits conditional uses is provided by N.J.S.A. 40:55D-67(a), which states in pertinent part:
A zoning ordinance may provide for conditional uses to be granted by the planning board according to definite specifications and standards which shall be clearly set forth with sufficient certainty and definiteness to enable the developer to know their limit and extent.
The MLUL defines "conditional use" to mean "a use permitted in a particular zoning district only upon a showing that such use in a specified location will comply with the conditions and standards for the location or operation of such use as contained in the zoning ordinance[.]" N.J.S.A. 40:55D-3.
The MLUL's authorization for a municipality to adopt a zoning ordinance that provides for conditional uses "constitutes a legislative recognition that certain types of uses, while generally desirable, are not suitable for every location within the district, and that it is sometimes difficult to deal with the special problems inherent in such uses through the zoning ordinance." PRB Enters. Inc. v. S. Brunswick Planning Bd., 105 N.J. 1, 8, 518 A.2d 1099 (1987). However, it is impermissible for a governing body to delegate its zoning power to the municipal planning board by authorizing the board to approve conditional uses without providing "clear and ascertainable standards to guide the exercise of the Board's discretion." Id. at 9, 518 A.2d 1099.
If a governing body adopts a zoning ordinance that purports to authorize a planning board to approve conditional uses without providing the required "definite specifications and standards" to guide the board's discretion, N.J.S.A. 40:55D-67(a), the ordinance is "void" and therefore does not confer authority upon the board to approve a use of land thereunder. Meszaros v. Planning Bd. of S. Amboy, 371 N.J.Super. 134, 149, 852 A.2d 236 (App.Div.2004); see also Cardinal Props. v. Borough of Westwood, 227 N.J.Super. 284, 287-88, 547 A.2d 316 (App.Div.), certif. denied, 111 N.J. 631, 546 A.2d 545 (1988); William M. Cox et al., New Jersey Zoning and Land Use Administration § 17-2.1 (2010). Therefore, if a trial court hearing an action challenging a planning board decision on an application for a land use approval under a section of a zoning ordinance authorizing conditional uses perceives a substantial question concerning the validity of this provision, it must determine whether the conditional use ordinance is valid before undertaking to review the board's decision.
Furthermore, if a court concludes there is a substantial question concerning the validity of a conditional use *535 provision that must be resolved before reviewing the action of the planning board under that provision, it should require the joinder of the governing body in the action. "The municipality is a necessary and indispensable party to an action in which its zoning ordinance is sought to be invalidated." Mayer v. Bd. of Adjustment of Montclair, 56 N.J.Super. 296, 301, 152 A.2d 860 (App.Div.1959), rev'd on other grounds, 32 N.J. 130, 160 A.2d 30 (1960); accord Cobble Close Farm v. Bd. of Adjustment of Middletown, 10 N.J. 442, 455, 92 A.2d 4 (1952). A municipality's legislative authority is conferred solely upon its governing body. See Willoughby v. Planning Bd. of Deptford, 306 N.J.Super. 266, 279, 703 A.2d 668 (App.Div.1997). Therefore, even though a planning board or board of adjustment is already a party to an action, the governing body also must be joined as a defendant before a court entertains a challenge to the validity of the zoning ordinance. See Cobble Close Farm, supra, 10 N.J. at 455, 92 A.2d 4; Mayer, supra, 56 N.J.Super. at 301, 152 A.2d 860.
The trial court failed to follow these required procedures. Despite strongly suggesting that the conditional use section of the zoning ordinance was invalid, which would mean that the Planning Board had no authority to consider Jackson Holdings' application, see Meszaros, supra, 371 N.J.Super. at 149, 852 A.2d 236, the court failed to require the joinder of Jackson Township as a party to the action and ordered the Planning Board to grant Jackson Holdings' application under this section of the ordinance. Therefore, the judgment of the trial court must be reversed.
We end this opinion with a cautionary note. A party to an action challenging a final decision of a planning board or board of adjustment should not be allowed to unnecessarily complicate an otherwise straightforward review of agency action by raising a spurious challenge to the validity of the zoning ordinance. Thus, a court is only required to compel joinder of the governing body if it makes a preliminary determination, as the trial court did in this case, that there is a substantial question as to the validity of the part of the zoning ordinance under which the challenged land use approval was granted.
Accordingly, the final judgment ordering the Planning Board to grant plaintiff's application is reversed, and the case is remanded to the trial court to join Jackson Township as a party to the action and for further proceedings in conformity with this opinion.